ESTATE OF SARAH BETTENCOURT, DECEASED, JOHN P. BETTENCOURT, EXECUTOR AND JOHN P. BETTENCOURT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bettencourt v. Commissioner
Docket No. 44721-85.
United States Tax Court
T.C. Memo 1987-313; 1987 Tax Ct. Memo LEXIS 313; 53 T.C.M. (CCH) 1219; T.C.M. (RIA) 87313; June 24, 1987. John P. Bettencourt, pro se. Monica J. Miller, for the respondent. PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) [1] (redesignated as section 7443A(b) by the Tax Reform *314 Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755), and Rules 180, 181 and 182. [2]
Respondent determined a deficiency in petitioners' [3] 1981 Federal income tax in the amount of $7,167.05. The issues for decision are (1) whether petitioners are entitled to a charitable contribution deduction in excess of the amount allowed by respondent for a gift of a boat; and (2) whether petitioners are entitled to a theft loss deduction in excess of the amount allowed by respondent. Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Danvers, Massachusetts at the time the petition was filed. Charitable Contribution
In late 1965 petitioner purchased a new 1965 Revelcraft, Flybridge *315 Sedan twin engine cruising yacht (hereinafter "boat") for $18,000. The boat had a flying bridge and the hull was made of wood. In addition, during 1966 through 1968, petitioner made improvements to the boat's performance, comfort, convenience and safety [4] which cost approximately $22,000. Petitioner meticulously maintained his boat at all times, and it was in excellent condition at the time the boat was disposed of in 1981. Petitioner continued to use his boat until the late 1970's when his wife's illness caused petitioner to substantially curtail the use *316 of his boat. Sometime during 1980 petitioner decided to sell the boat. Although petitioner did not list his boat with a broker or formally advertise the boat, he let it be known in the marina that he was interested in selling his boat. Petitioner felt the boat was worth at least $25,000. Petitioner received a few offers but did not finalize any sale. The highest offer petitioner received was $16,000 conditioned upon receiving financing. However, the purchaser was unable to get financing because of the boat's wooden hull. Petitioner also received a few offers based on the Buc [5] value of the boat. Petitioner rejected these offers because he felt the Buc value did not properly reflect the true value of the boat. Subsequently, petitioner saw an advertisement for a "yacht donation program" in a boating magazine. He pursued this program by contacting Mr. David Pottinger (hereinafter Pottinger) of Ocean Science Development, Inc. (hereinafter OSD). OSD was affiliated with Marine Learning Institute and South Florida Institute of Marine Sciences, *317 Inc., both charitable organizations. OSD performed service work on the boats and administered yacht donation programs for both of these organizations. After discussions with Pottinger, petitioner decided to donate his boat to South Florida Institute of Marine Science, Inc. (hereinafter Institute) to be used for biological research. Petitioner received tax information from Pottinger pertaining to charitable contributions of property and was aware that it would be necessary to obtain an appraisal of his boat before making the donation. Petitioner engaged Mr. Robert P. Gulick (hereinafter Gulick) to make the appraisal. Gulick examined the boat, noting the aforementioned improvements and its overall excellent condition. Gulick appraised the boat between $22,500 and $23,000. He arrived at this value by using a two-step process. First, Gulick ascertained the base price [6] of the boat, using a 1981 Buc book for guidance. Buc book value for a 1965 Revelcraft was between $11,600 and $13,100. Due to the excellent condition of the boat and the fact that it had been purchased in late 1965, Gulick found the base price to be $13,100. Gulick then determined that the improvements added *318 an additional $9,400 to the value of the boat. Adding these two amounts he arrived at a total value of $22,500. Gulick then compared this amount with sale listings for similar boats and and concluded that his estimate was well within the sale prices of such boats. On April 27, 1981, petitioner transferred the boat to the Institute. Pottinger, who suggested donating the boat to the Institute, handled the transfer of the boat. Shortly thereafter the boat was sent to Jen Yacht Brokers in Connecticut and offered for sale. On July 9, 1981, the Institute sold the boat and received $8,000 in cash plus another boat which had a value of $2,000. Respondent contacted petitioner and questioned the large deduction claimed for the charitable contribution, especially in view of the low selling price. Subsequently, petitioner sought out the purchaser of the boat in an effort to ascertain why the boat was sold for so little. The purchaser would not allow petitioner to view the boat, but described the boat at the time of purchase. Based on the description of the boat, petitioner was of the impression that the purchaser *319 had received a "very naked" boat. For purposes of this case, the amount of a charitable contribution deduction for property donated to a charity is the fair market value of the property at the time of donation. Sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is a question of fact and is determined by examining the entire record. Skripak v. Commissioner,84 T.C. 285, 320 (1985). Petitioner bears the burden of proof to show that respondent's determination is in error. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner supported his claimed deduction with a comprehensive appraisal made just prior to the transfer of the boat. In addition, petitioner and another witness familiar with the boat were able to document the improvements to the boat. We find petitioner's expert witness to be well qualified and that he based his opinion upon all the facts and circumstances at the time of the donation. We also find petitioner to be a credible witness. Respondent argues that we should give greater weight to the subsequent sale of the boat for $10,000 than to the opinion of petitioner's expert witness. We disagree. A subsequent sale *320 is only evidence of value to the extent it is an arm's-length sale and also to the extent external factors have not changed the value of the item. Staley v. Commissioner,41 B.T.A. 752, 769 (1940). See Wheeler v. Commissioner,T.C. Memo. 1978-208. Here, the record does not reflect whether the sale was made at arm's-length or that the boat was in the same condition as it was at the time of the gift. The seller was a charitable organization that received the boat as a gift. Under such circumstances the Institute might have lacked motivation to obtain a higher price for the boat since whatever amount was received was profit. Under the circumstances, we find that there is such uncertainty regarding the subsequent sale that it lacks probative value. Respondent claims that petitioner's inability to sell the boat for approximately $16,000 indicates that he placed too high of a price on the boat for gift purposes. Petitioner's failure to sell the boat appears to be attributable, in part, to a lack of effort. Although petitioner indicated to boating acquaintances a desire to sell the boat, he never listed the boat, nor did he contact a broker. Admittedly, *321 the boat's wooden hull caused some difficulty in selling the boat at a price in excess of the Buc value. We recognize petitioner had spent a considerable amount of money customizing the boat and installing extra equipment. We also recognize that the equipment was placed on the boat during 1966 through 1968 and was several years old at the time of the gift in 1981. Since both parties agree that the value for the basic boat was $13,100, the dispute really centers on the value of the additional equipment. The Buc value of a boat in excellent condition and equipped with many extras is increased by 20 to 30 percent of the basic value of the boat. Using this standard, the equipment should be valued between $2,600 and $4,000. Based on the record, we think petitioner's boat and equipment were in excellent condition at the time of the gift. Accordingly, we feel $3,500 should be added to the base value of $13,100 for a total fair market value of $16,600 at the time of the gift. Petitioner's expert witness valued the equipment at $9,400. However, we are of the view that he placed too much weight on the cost of the equipment and too little weight on the age of the equipment. Theft Loss
*322 The parties are in full agreement as to the pertinent facts concerning petitioner's theft loss. On November 21, 1981, petitioner's home was burglarized. The burglary resulted in $330 of damage to the house, and personal property valued at $2,555 was stolen. Petitioner paid $1,420 for the stolen property. Petitioner received $945 as reimbursement for his loss from his insurance company. As a result of the burglary, petitioner claimed a theft loss in the amount of $2,555, the fair market value of the property at the time of the theft. Petitioner reduced this amount by the insurance reimbursement of $945 and the $100 statutory exclusion and claimed a theft loss of $1,510. Respondent contends the theft loss deduction is limited to petitioner's adjusted basis in the property of $1,420 plus the damage to the house of $330 less the above reductions, or $705. A theft loss deduction is limited to the lesser of the taxpayer's adjusted basis in the stolen property at the time of the loss or the fair market value at that time reduced by any insurance or other compensation. Helvering v. Owens,305 U.S. 468 (1939). Secs. 1.165-9(c) and 1.165-7(b)(1), Income Tax Regs. *323 In the instant case petitioner's adjusted basis in the property was its cost of $1,420. Secs. 1011 and 1012. Since this amount is less than the fair market value of the property at the time of the theft, the loss is limited to this amount less the insurance reimbursement. Accordingly, we agree with respondent's position. Decision will be entered under Rule 155.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioner Estate of Sarah Bettencourt is a petitioner herein solely by reason of the decedent's having filed a joint return. Hereinafter all references to "petitioner" are to John Bettencourt.↩
4. The improvements included the following: Performance - upgraded the propellers, propeller shafts, rudders and transmission; installed down angle drives for the engines; and replaced the keel; Comfort - doubled the bunk accommodations; enclosed the cockpit; Convenience - remodeled the main deck; installed folding mahogany and glass doors on the back face of the wheel house; upgraded to a fiberglass water tank; Safety↩ - installed a fire protection system, stainless steel sea cocks, radio, radar and telephones; rebuilt the hull frame; upgraded the safety rails; and recovered and sealed the decks.
5. The Buc book is a used boat price guide. It lists price ranges for various models and sizes of boats from 1907 to the present time.↩
6. The base price is the price of the boat without improvements.↩